U.S.D.C ATLANTA
Date: Aug 20 2020
JAMES N. HATTEN, Clerk
By: s/B. Evans
Deputy Clerk

# United States District Court
NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

ELVIS EGHOSA OGIEKPOLOR

**CRIMINAL COMPLAINT**
Case Number: 1:20-MJ-678

**UNDER SEAL**

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. Beginning by at least October 2019 and continuing until present in Fulton County, in the Northern District of Georgia and elsewhere, defendant did: (a) conspire to commit money laundering; and (b) engage in money laundering involving monetary transactions of greater than $10,000 derived from a specified unlawful activity,

in violation of Title 18, United States Code, Sections 1956(h) & 1957.

I further state that I am a Special Agent with the FBI and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.   Yes

*Jared Sikorski*
Signature of Complainant
Jared Sikorski

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

| August 20, 2020 | at | Atlanta, Georgia |
|---|---|---|
| Date | | City and State |

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                Signature of Judicial Officer
AUSA Alex R. Sistla / 2020R00693

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jared Sikorski, a Special Agent with the Federal Bureau of Investigation (FBI), depose and say under penalty of perjury as follows:

## INTRODUCTION

1.      This Affidavit is made in support of a criminal complaint for **ELVIS EGHOSA OGIEKPOLOR**, for violations of 18 U.S.C. §§ 1956(h) (conspiracy to commit money laundering) and 1957 (money laundering – involving monetary transactions of greater than $10,000 derived from a specified unlawful activity) occurring in the Northern District of Georgia and elsewhere beginning no later than in or about October 2019 and continuing to the present day.

## AFFIANT BACKGROUND

2.      I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3.      I am employed as an FBI Special Agent and have been since May 12, 2019. I work primarily on cybercrime matters and have received cyber-specific training. I gained substantial experience in cyber-related topics throughout the course of numerous investigations. As a Special Agent of the FBI, I received extensive training on investigation of violations of federal statutes, and I have conducted numerous federal investigations. These investigations include the preparation of and execution of arrest warrants. I conducted numerous investigations

that resulted in the acquisition of information that is sufficient for probable cause to issue arrest warrants and search warrants.

4. I make this affidavit based upon personal knowledge derived from my training, experience, and participation in this investigation, and information that I have learned from discussions with other investigators. The facts related in this affidavit do not reflect the totality of information known to me or other investigators, merely the amount needed to establish probable cause. Unless otherwise noted, wherever in this affidavit I asserted that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or indirect or hearsay knowledge of that statement and to whom I or others have spoken. I do not rely upon facts not set forth herein in reaching my conclusion that a complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit.

## PROBABLE CAUSE

5. On or about August 11, 2020, FBI Special Agents interviewed a confidential human source ("CHS") in the Northern District of Georgia. CHS has not been compensated by the FBI. Agents interviewed CHS because s/he was the recipient of a fraudulent $32,000 wire transfer on October 31, 2019 (further described below in Paragraph 9). During the interview, and in connection with this fraudulent transfer (and others), CHS identified the individual who is the subject of this criminal complaint, **ELVIS EGHOSA OGIEKPOLOR** ("**OGIEKPOLOR**"), who CHS also knows as "Neihma" or "Boss." CHS stated s/he is currently in close contact with **OGIEKPOLOR**. CHS advised s/he met **OGIEKPOLOR** on a dating website in or about July 2018. From the time they met to present date, **OGIEKPOLOR** directed CHS to make large financial transactions under the impression that these transactions were to assist with

**OGIEKPOLOR's** business. CHS advised interviewing Agents that **OGIEKPOLOR's** business consisted of purchasing vehicles in the U.S. and shipping them to Nigeria. CHS voluntarily agreed to cooperate with law enforcement to aid in identifying **OGIEKPOLOR's** fraud schemes, which included laundering substantial sums of money overseas.

6. **OGIEKPOLOR's** address is 4166 Magnolia Glen Walk, Norcross, GA 30093. CHS advised s/he visits **OGIEKPOLOR's** residence on a regular basis to assist him with bidding on vehicles online. CHS advised **OGIEKPOLOR** has at least two laptops in his residence which he uses to conduct his business. CHS advised **OGIEKPOLOR** is planning to return to Nigeria very shortly but does not know the exact date of his planned return. CHS advised **OGIEKPOLOR** has begun packing and cleaning up his house as if he was preparing to move. According to information obtained from USCIS, **OGIEKPOLOR** is neither a United States citizen nor a lawful permanent resident ("LPR"). USCIS has advised me that **OGIEKPOLOR** is "out of status," but he has a pending LPR petition that has been filed on his behalf by a United States citizen who is allegedly his wife, as well as an application to adjust his status to remain lawfully in the United States.

7. CHS advised that in or about October 2019, **OGIEKPOLOR** instructed CHS to open a Georgia business named "H.R. LLC" in CHS's actual name. **OGIEKPOLOR** instructed CHS to open H.R. LLC as a furniture LLC because obtaining an automotive LLC was much more difficult. CHS registered the business but never opened a physical furniture store. According to information available on the Georgia Secretary of State's website, H.R. LLC was registered by CHS on October 3, 2019.

8. Once CHS registered H.R. LLC, **OGIEKPOLOR** instructed CHS to open a business bank account in the Northern District of Georgia at JPMorgan Chase in the name of

H.R. LLC with CHS as the account holder. The H.R. LLC JPMorgan Chase account was opened on October 25, 2019 and was closed on February 11, 2020. After JPMorgan Chase closed the bank account for suspicious activity, **OGIEKPOLOR** instructed CHS to open another business bank account in the name of H.R. LLC at a different bank. This pattern subsequently repeated itself at other banks. In total, CHS opened accounts at **OGIEKPOLOR's** direction in the Northern District of Georgia at BB&T (now Truist Bank], Fifth Third, JPMorgan Chase, Regions, and Woodforest in the name of H.R. LLC/CHS. According to the Federal Deposit Insurance Corporation's ("FDIC") website, each of these banks are FDIC insured.

9. On February 8, 2020, Victim-1, who resides in Minnesota, filed an FBI Internet Crime Complaint Center ("iC3") complaint. In summary, the complaint stated Victim-1 fell victim to a $71,000 romance scam. Between approximately October 3, 2019 and November 5, 2019, Victim-1 conducted the following financial transactions from Victim-1's Wells Fargo account to the scammer:

   a. October 3, 2019: Victim-1 wired $23,000 to a Bank of America account in New York.
   b. October 18, 2019: Victim-1 wired $8,000 to a Fifth Third Bank account in Indiana.
   c. **October 31, 2019: Victim-1 wired $32,000 to a JPMorgan Chase Bank account in the name of H.R. LLC in Norcross, Georgia.**
   d. November 5, 2019: Victim-1 sent $8,000 in cash to an address in Massachusetts.

10. Beginning on August 11, 2020 and continuing to the present date, CHS has voluntarily provided FBI Agents screenshots of his/her conversations with **OGIEKPOLOR**. On

August 14, 2020, CHS also provided FBI Agents copies of H.R. LLC's JPMorgan Chase statements which corroborated the activity described below.

11. On October 31, 2019, **OGIEKPOLOR** sent CHS a WhatsApp message containing a photo of a wire receipt for $32,000. This receipt indicated that this wire originated from Victim-1's Wells Fargo account that same day. **OGIEKPOLOR's** following message stated, "from MINNESOTA." (see WhatsApp message screenshots below)



12. On November 1, 2019, **OGIEKPOLOR** sent CHS a WhatsApp message instructing CHS to meet him at a JPMorgan Chase branch located at 3780 Old Norcross Rd.,

Duluth, GA 30096. Per **OGIEKPOLOR's** instructions, CHS withdrew two money orders in the amounts of $9,600 and $3,850 from the JPMorgan Chase H.R. LLC account. CHS advised s/he then gave the money orders to **OGIEKPOLOR** (see below in screenshot).



13.     On November 4, 2019, per **OGIEKPOLOR's** instructions, CHS completed a $9,680 cash withdrawal from JPMorgan Chase H.R. LLC, a $600 money order, and a $1,400

cash withdrawal from CHS's personal Wells Fargo account (see screenshot below).



14.     On November 6, 2019, per **OGIEKPOLOR's** instructions (via a WhatsApp message), CHS wired $39,600 from the JPMorgan Chase H.R. LLC account to a Bank of Communications, Anhui Branch in China. **OGIEKPOLOR** also instructed CHS to withdraw $14,300 (see below). In my training and experience, individuals involved in laundering the proceeds of romance scams, business email compromise schemes, and other related-fraud scheme often transfer the proceeds of their fraud to overseas accounts, including to those located in the Middle East and China. Accordingly, I believe that the $39,600 wire referenced in this

Page 7 of 11

paragraph is consistent with such unlawful money laundering activity.



15. On August 13, 2020, **OGIEKPOLOR** sent CHS a WhatsApp message with a picture of a Bank of America cashier's check in the amount of $49,800.37 made to the order of H.R. LLC from the remitter R.T TILE LLC.

16. That same day, FBI Agents witnessed **OGIEKPOLOR** enter a restaurant at 6010 Singleton Rd, Norcross, GA 30093, to meet with CHS who was awaiting his arrival inside. **OGIEKPOLOR** and CHS exited the restaurant together and entered a black four-door Mercedes-Benz bearing the dealer tag XIX 676 ("the Mercedes"). A National Crime Information Center ("NCIC") lookup of the dealer tag indicated it is registered to AFFORDABLE DREAM CARS LLC, 5336 Jonesboro Rd., Lake City, GA.

17.     The Mercedes drove down the shopping strip and stopped in front of the Kroger at 6050 Singleton Rd, Norcross, GA 30093. Once stopped, CHS exited the vehicle and entered the Kroger. Once inside, CHS went to the Fifth Third Bank, deposited the aforementioned $49,800.37 Bank of America cashier's check in a Fifth Third account in the name of HR LLC, and withdrew two cashier's checks in the amounts of $40,000 and $14,800 (see below for corroborating Fifth Third Bank receipts). CHS then exited the Kroger and entered the Mercedes. CHS advised FBI Agents that s/he gave **OGIEKPOLOR** both cashier's checks once in **OGIEKPOLOR's** vehicle.



18.     AFFORDABLE DREAM CARS LLC ("ADC") was named as a subject in an FBI iC3 complaint on December 1, 2017. The complaint states that a Delta Credit Union account in the name of ADC, located at 5336 Jonesboro Rd., Lake City, GA, was the recipient of a reported

loss of $192,250.00. This loss originated from a Navy Veteran who was scammed by a malicious actor posing as a Chinese Senior Business Consultant.

19. CHS advised that on or about August 17, 2020, **OGIEKPOLOR** had a Mercedes-Benz G-Class delivered to his residence from Big Valley Auto Auctions. CHS believed the vehicle was purchased with fraud proceeds.

20. On August 19, 2020, FBI Agents conducted a consensual monitoring of CHS. FBI Agents outfitted CHS with an audio/video recording device for the purpose of recording an in-person conversation with **OGIEKPOLOR**. FBI Agents conducted a surveillance of the meeting.

21. FBI Agents witnessed **OGIEKPOLOR** and CHS exit a restaurant in Norcorss, GA and enter a Mercedes-Benz G-Class bearing the dealer tag XIX 676. This dealer tag is the same tag which was on **OGIEKPOLOR's** black Mercedes on August 13, 2020 which is referenced in paragraph 16.

22. The CHS was debriefed after his/her meeting with **OGIEKPOLOR.** CHS advised **OGIEKPOLOR** gave him/her two Wells Fargo cashier's checks for CHS to deposit at Fifth Third Bank the next day (Thursday, August 20, 2020). CHS showed FBI Agents the following Wells Fargo cashier's checks:

   a. One cashier's check in the amount of $31,000 which was dated August 18, 2020 made payable to H.R. LLC from the remitter John Livingston.

   b. One cashier's check in the amount of $32,000 which was dated August 15, 2020 made payable to H.R. LLC from the remitter Kimberly Harding.

23. Based upon the foregoing, I submit there is probable cause to believe that **ELVIS EGHOSA OGIEKPOLOR** violated 18 U.S.C. §§ 1956(h) (conspiracy to commit money laundering) and 1957 (money laundering – involving monetary transactions of greater than

$10,000 derived from a specified unlawful activity) occurring in the Northern District of Georgia and elsewhere beginning no later than in or about October 2019 and continuing to the present day.